W. D. CHIPLEY, APPELLANT, VS. A. FRIERSON, APPELLEE.

A claim against a person for withholding the proceeds arising from the
sale of goods consigned to him to be sold on commission, is not a
debt contracted by him in a "fiduciary capacity," within the mean-
ing of the bankrupt law of 1867.

Appeal from the Circuit Court for Escambia county.
The facts of the case are stated in the opinion.

*G. A. Stanley* for Appellant.

*John C. Avery* for appellee.

Mr. Justice Westcott delivered the opinion of the court.

The 33d Section of the Bankrupt Law of 1867 provided that " no debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity, shall be discharged under this act."

W. D. Chipley, the defendant in the court below, appellant here, was the consignee of a lot of grain shipped to him by Frierson, and on account of the sale of the grain he stood indebted to him in a sum of money. No fraud, deceit or bad faith is alleged. It is a simple debt of factor to principal for amounts realized from sale of a consignment of grain. He (Chipley) became a bankrupt. After his discharge Frierson brings this action against him, and Chipley pleads this discharge in bar of the action.

Upon special verdict finding the amount of the indebtedness, the matter of the discharge not being denied, the court gave judgment for the plaintiff, and defendant prosecutes this appeal to this court.

The question here, therefore is, is the liability of a factor for the proceeds of goods consigned to him for sale released by his discharge in bankruptcy? The solution of this question depends upon the construction to be given to the 33d Section of the Bankrupt Law. The question, therefore, is, Is such a debt " a debt created * * * while acting in a fiduciary capacity," within the meaning of that law?

This is a question involving the construction of an act of Congress which can be finally settled only by the Supreme Court of the United States, and it is to be regretted that a case involving the precise point has not been decided by that court.

The views of the courts of the United States and of the tribunals of last resort in the several States have differed upon this subject. A review of these decisions, we think, will clearly show that the decided weight of authority is against the view that such a debt was a debt created while acting in a fiduciary capacity, within the meaning of the bankrupt law.

After the passage of the bankrupt act of 1867, the first case we find involving this question is the case of *In re* Seymour, 1 B. R., 29, s. c.; 1 Ben., 348. The District Court of the United States, S. D., New York, there held that such a debt was a debt created while acting in a fiduciary capacity. In the case of *In re* J. H. Kimball, 2 B. R., 204, s. c.; 6 Blatch., 292, the Circuit Court of the United States, embracing the same District, announced the same view. In Lemcke vs. Booth, 47 Mo., 387, (decided in 1871) the Supreme Court of Missouri, accepting these early decisions as controlling authority, made a similar decision. In a case reported in 46 California, (decided before 1874) which we have not seen, a like conclusion based upon the same decisions was reached. (See remarks of Brickell, C. J., in Woolsey vs. Cade, 54 Ala., 383.) In Whitaker vs. Chapman, 3 Lans., 158, (Supreme Court of New York) decided in 1870, the same conclusion based upon the same decisions was reached. The same is true of the case of Banning vs. Bleakly & Co., 27 La., 263, decided in 1875. There is another case in Louisiana holding that such a debt is a debt created while acting in a fiduciary capacity. (31 La. An., 819.) The ground of the decision was because the legislation of that State had stamped the relation of the factor with a fiduciary character. As a matter of course the legislative policy of that State has no operation here.

Two cases are cited by the appellee from the Supreme Court of Georgia as sustaining this view. The citation

from 47th Georgia is a mistake, and the case of Meador vs. Sharp, 54 Ga., 128, we have not been able to examine. The case in the Supreme Court of Illinois, (Matterson vs. Kelly, 15 Ill., 549,) decided in 1854, was not the case of a simple indebtedness between principal and factor. The court itself says: "Such was not the character of this (that) transaction." This case, it will be observed also was decided in 1854, and did not as a matter of course propose to construe the bankrupt act of 1867.

. The cases above-mentioned are those which sustain the proposition that such is a debt created while acting in a fiduciary capacity. It is seen that they are based upon the earlier cases in New York.

The later cases in the courts of the United States sustain the view that such a debt is not a debt created while acting in a fiduciary capacity.

In the case of Grover & Baker Sewing Machine Co. vs. Clinton, 5 Biss., 325, decided by Circuit Court of the United States for the Seventh Circuit in June, 1873, that court, following the principle of the decision in the Supreme Court of the United States in Chapman vs. Forsyth, 2 How., 202, as it understood that case and the decision of the Supreme Court of Massachusetts in Cronan vs. Cotting, 104·Mass., 245, decides that such a debt is not a debt of the character stated. This court refers to the decision in New York, and remarks that the reasons there assigned "fail to satisfy us of the correctness of their conclusions." It is there said also that "we do not believe that Congress intended by the slight and insignificant change in the phraseology in the present act (that of 1867) to alter the defined meaning and judicial construction given to the act of 1841, and hence regard the decision under that act as binding upon the courts in construing the present act." The opinion in this case was rendered by the District Judge, but Mr. Justice

David Davis, of the Supreme Court of the United States, concurred in the opinion.

The next case we find in the courts of the United States is the case of Owsley vs. Cobin, in the Circuit Court of the United States, South Carolina, in June, 1877, 15 B. R., 491, decided by Chief-Justice Waite, of the Supreme Court of the United States. Such a debt is there held not to be of the character excepted from the operation of the discharge in bankruptcy. The opinion simply announces this conclusion and an acquiescence in the reasoning of the decisions in Chapman vs. Forsythe, 2 How., 208, in Cronan vs. Cotting, 4 N. B. R., 667, and in Grover vs. Clinton, 8 B. R., 313, S. C., 5 Biss., 325, which we have already commented upon.

The next case we find is that of Keime vs. Groff & Co., 17 N. B. R., 319, in the Circuit Court of the United States, W. D. Penn., decided in March, 1878. This court follows the decisions before referred to, and alludes with disapproval to the New York cases. In disposing of the question this court, like the others sustaining this view, remarks: "That the 33d section of the bankrupt law is substantially the same with its kindred section in the act of 1841, and that its scope and meaning are therefore authoritatively determined by the decision of the Supreme Court" of the United States in Chapman vs. Forsythe, 2 How., 202.

The next case we find is that of *In re* Smith, *et al.*, decided by the District Court U. S., S. D. New York, May 29, 1878, 18 N. B. R., 26. This is the same District in which the decisions of Judges Blatchford and Nelson were rendered. These decisions were, as we have seen, based upon the view that the 33d section of the act of 1867 was much broader in its terms and meaning than the corresponding section of the act of 1841, but the court in this case of *In re* Smith holds to the contrary, and that

such debt of a factor is not excepted. In the case of Neal vs. Clark, 95 United States, 708, the Supreme Court of the United States, in October, 1877, while not covering the precise point here involved, does hold that the like process of reasoning by which the same court in Chapman vs. Forsythe, 2 How., 202, arrived at the conclusion that the debt of a factor was discharged under the act of 1841, may be properly employed in construing the corresponding section of the act of 1867. Not wishing to extend this opinion to an unreasonable length, we will not insert that reasoning here, but will only say that to any one having sufficient interest in the subject to induce an examination of that case it will be clear that the result of the application of the reasoning there employed to the act of 1867 sustains the view that a factor's debt is not excepted from its operation.

In the State courts we find the decision of the Supreme Court of Massachusetts in Cronan vs. Cotting, 104 Mass., 246, decided in 1875, cited in several cases as sustaining this view, (see 54 Ala., 388,) is placed upon the ground that Chapman vs. Forsythe controls the subject, there being no substantial difference in the acts ; that this had been the previous judicial construction, and that if Congress had a different intention it was to be presumed that it would have been indicated by some distinct provision to that end. The preceding decisions in the District and Circuit Courts of New York to the contrary are disapproved. In Hannequin vs. Clews, 77 New York, 431, a case decided by the Court of Appeals of New York after the decisions in Lansing in the Supreme Court of New York, and therefore the controlling authority, Church, Chief-Justice, delivering the opinion, held the decision in Chapman vs. Forsythe to be in point and controlling, and that such a debt was not excepted. Allusion is made to the early cases in the South-

ern District of New York in this case. It certainly cannot be necessary to do more in this connection than to refer to the other and later cases in the State courts sustaining this view.

The same conclusion is reached by the Supreme Court of Alabama in 54 Ala., 378, decided in 1875 ; by the Supreme Court of Massachusetts in 107 Mass., decided in June, 1879 ; by the Supreme Court of Pennsylvania in 92 Penn. State, 109, decided in November, 1879 ; and by the Supreme Court of Mississippi in 57 Miss., 599, decided in April, 1880.

These decisions are based upon two grounds : First, as a matter of authority and precedent, and as fixing the rule of construction upon the decision of the Supreme Court of the United States in Chapman vs. Forsythe, it being held that there is no substantial difference in this respect between the act of 1841 and the act of 1867. Second, that as a matter of construction it should not be held that such a debt is excepted from the operation of the act, because it would be inconsistent with the policy, purpose, object and intent of the bankrupt act, in that it would be inconsistent with " the object and intention of Congress in enacting this general law by which the honest citizen may be relieved from the burden of hopeless insolvency," and that " a different construction would be inconsisent with the liberal spirit which pervades the entire bankrupt system."

In Chapman vs. Forsythe, 2 How., 202, speaking of the act of 1841, the Supreme Court of the United States remark, when considering the matter of a factor's debt to his principal, " if the act embraces such a debt it will be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor; such a construction would have left but four debts on which

the law could operate. In almost all the commercial transactions of the country confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of the trust. But this is not the relation spoken of."

It is for these reasons that the courts of the United States seem disinclined to limit the operation of a discharge in bankruptcy, and are rather disposed to extend its operation in view of the general purpose which it was designed to accomplish and the policy upon which it was founded; that is, to relieve from all debts in which there is not some element of trust or other matter of a fiduciary character involving something more than the violation of that ordinary commercial confidence and reliance which exist in most transactions incident to ordinary trade and commerce.

In this matter the courts of the United States must give us the rule of decision. While there is a difference, the overwhelming weight of authority is against excepting this debt from the operation of the bankrupt act, and we are satisfied that the decisions which control our judgment were not accessible to, and could not have been seen by. the Judge of the Circuit Court who decided this case.

The evident policy of the act has, in a great measure, controlled its construction in this and many other respects, and, as a matter of course, what we have said in no manner proposes to define the relation of principal and factor outside of the operation of the bankrupt act.

The judgment is reversed, and the case will be remanded with direction to enter judgment for the defendant upon the merits.