**In re Danny STOKES; Sandra Roberts–Stokes, Debtors.**

**Andrea R. BRAUD, Plaintiff,**

**v.**

**Danny STOKES; Sandra Roberts–Stokes, Defendants.**

**In re Hiawatha T. ROBERTS, Jane G. Roberts, Debtors.**

**Andrea R. BRAUD, Plaintiff,**

**v.**

**Hiawatha T. ROBERTS, Defendant.**

**Bankruptcy Nos. 91–46756 NR, 91–47835 T.**

**Adv. Nos. 92–4060 AN, 92–4077 AN.**

United States Bankruptcy Court, N.D. California.

July 23, 1992.

William F. McLaughlin, San Francisco, Cal., for defendant Hiawatha T. Roberts.

Harvey Sohnen, Walnut Creek, Cal., for plaintiff Andrea Braud.

Winslow West, San Francisco, Cal., for defendants Danny Stokes, Sandra Roberts–Stokes, Hiawatha Roberts.

DECISION AND ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

These Chapter 7 adversary proceedings are before the Court upon the Court's own

motion to dismiss [1] pursuant to status conferences conducted on March 11, 1992. The simple issue presented by both proceedings is whether debt arising from an attorney's professional negligence is nondischargeable in the attorney's bankruptcy as a defalcation by a fiduciary within the meaning of 11 U.S.C. Section 523(a)(4).

The complaints are grounded on the same set of facts. On August 2, 1985 plaintiff suffered injuries from a fall in a Woolworth's department store in Oakland, California. On August 5, 1985 plaintiff retained the debtors, who are attorneys licensed by the State of California, to pursue her claim against Woolworth's. Debtors, on behalf of plaintiff, filed a complaint for damages in the appropriate court on July 25, 1986. Debtors failed, however, to serve the defendant within three years after the complaint was filed, and on March 27, 1990 the Court dismissed the complaint as pursuant to California Code of Civil Procedure Section 583.250.

On December 20, 1990 the plaintiff filed a complaint against the defendants claiming that they acted negligently in failing to serve Woolworth's within the requisite three-year period. No allegations of fraud or other misconduct were pled.

The Superior Court of Alameda County referred plaintiff's malpractice action to an arbitrator, who found that the defendants' negligence was the cause of the plaintiff's loss, and awarded damages to the plaintiff in the amount of $6,000. Costs of $775.65 were also allowed. No party filed a request for a trial de novo of the matter, and pursuant to California Code of Civil Procedure Section 1141.20 the arbitrator's award became a final judgment.

■ On October 23, 1991 defendants Danny Stokes and Sandra Roberts–Stokes filed Chapter 7 petitions in this court. Defendant Hiawatha T. Roberts did so on December 10, 1991. These two adversary proceedings followed. The legal theory upon which both are premised is that defendants as attorneys owed a fiduciary obligation to the plaintiff as their client; that they caused the value of plaintiff's cause of action to be lost through their negligence; that property lost through the negligence of a trustee falls within the sweep of "defalcation" as that term is comprehended for purposes of Section 523(a)(4) (*In re Graziano,* 35 B.R. 589, 594 (Bankr. E.D.N.Y.1983)); and that the debt created by their negligence must therefore be nondischargeable under that section. In support of this theory, plaintiff principally relies upon *In re Gelman,* 47 B.R. 735 (Bankr.S.D.Fla.1985) and *In re Janikowski,* 60 B.R. 784 (Bankr.N.D.Ill.1986). Both of those cases seem to hold (although not unequivocally) that the loss of a client's legal rights through the negligence of his attorney constitutes a defalcation by that attorney just as surely as "a failure to account for entrusted moneys would have been." *Id.* at 790.

■ I have no quarrel with much of what is said in *Gelman* and *Janikowski.* However, to the extent that those cases hold that Section 523(a)(4) makes nondischargeable debts arising from mere negligence by an attorney who does not hold the position of a trustee with regard to his client's property, I disagree. While it appears to cover the vast array of relationships which might be deemed fiduciary or confidential under state law, as a matter of federal law only fiduciary relationships arising from express or statutory [2] trusts

---

1. As required by *Franklin v. State of Oregon, State Welfare Division,* 662 F.2d 1337, 1340–41 (9th Cir.1981), the plaintiff was given notice of the proposed dismissal and given an opportunity to submit written argument in response. Plaintiff filed a "post-status conference" memorandum on March 19, 1992.

2. The cases usually refer to express, *technical* or statutory trusts. The term "technical trusts" was first used in this context by the U.S. Su-

preme Court in *Chapman v. Forsyth,* 43 U.S. 202, 208, 11 L.Ed. 236 (1844). It appears that the Court was referring to true or formal trusts by its use of this term, rather than those implied at law. *See In re Pedrazzini,* 644 F.2d 756, 758 n. 2 (9th Cir.1981); *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990).

As defined, "technical" is thus a redundancy, since its meaning is encompassed entirely by "express." 76 Am.Jur.2d *Trusts* Section 11, pg.

are covered by the statute. State law, however, governs in determining whether such trusts exist. *Chapman v. Forsyth,* 43 U.S. 202, 208, 11 L.Ed. 236 (1844); *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir. 1986); *In re Hooper,* 112 B.R. 1009, 1013 (9th Cir. BAP 1990).

■ As is true in other jurisdictions, "[i]t is ... well established in California that the relationship of attorney and client is one of trust and confidence and that the attorney owes to his client all of the obligations of a trustee." *Green v. MacAdam,* 175 Cal. App.2d 481, 487, 346 P.2d 474 (1959) However, it is equally settled that having fiduciary duties akin to those of a trustee does not make one a trustee. *E.g., Bainbridge v. Stoner,* 16 Cal.2d 423, 428, 106 P.2d 423 (1940) (while the director of a corporation is imbued with the duties of a trustee, he is not a trustee of corporate property); *In re Lamb,* 61 Cal.App. 321, 328, 215 P. 109 (1923) ("not every obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another is a trust, within the legal meaning of the term.") Since no California statute elevates the attorney-client relationship to one of trustee-beneficiary status,[3] Section 523(a)(4) can come into play only if the defendants held the position of trustees of an express trust for the benefit of the plaintiff. The essential elements of an express trust are: "1) sufficient words to create a trust; 2) a definite subject; and 3) a certain and ascertained object or res. The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust." *In re Thornton,* 544 F.2d 1005, 1007 (9th Cir.1976), *quoted in In re Pedrazzini,* 644 F.2d 756, 758 n. 2 (9th Cir.1981); *see also, Estate of Johnston,* 47 Cal.2d 265, 270, 303 P.2d 1 (1956); Cal. Prob.Code Sections 15201–15205 (West 1991). The creation of a trust requires more than the holding of property in the capacity of an agent or bailee. Some "es-

tate" (i.e. right, title or interest) in the property must be conveyed to the trustee in order for a trust to come into existence. See *Estate of Johnston* at 270, 303 P.2d 1. In other words, "[i]f it appears that the purported settlor retained title and the right of control over property deposited with another, there is no trust." 11 B.E. Witkin, Summary of California Law, Trusts Section 33 (9th ed. 1990); *see also, Carr v. Bank of Italy,* 113 Cal.App. 6, 9, 297 P. 630 (1931); *Bainbridge v. Stoner,* 16 Cal.2d 423, 428, 106 P.2d 423 (1940) (director of corporation had no title to corporate property, and thus was not a trustee); *Noble v. Learned,* 153 Cal. 245, 250, 94 P. 1047 (1908) (no title to 40 shares of stock passed to holder of certificate); *Monell v. College of Physicians & Surgeons,* 198 Cal.App.2d 38, 51, 17 Cal.Rptr. 744 (1961) (client conveyed no title to funds held by his attorney to pay for client's medical bills and thus attorney was an agent rather than trustee). As has been noted in a different context:

An agent as such is not owner of the principal's property, although he may have powers with respect to it. That is clear. But a trustee is more than an agent. He owns the trust property subject to his duty to hold it for the benefit of the *cestui que trust.* Because one man undertakes to look after another's affairs he does not get legal title to the other's property. He may have all of the duties of loyalty that go with a confidential agency but he is still not a trustee.

*Sherwin v. Oil City National Bank,* 229 F.2d 835, 838–39 (3rd Cir.1956) (footnotes omitted).

While plaintiff's cause of action qualified as property capable of being held in trust (Restatement (Second) of Trusts Section 82 (1959)), there is no allegation in the complaint that plaintiff intended to and did in fact convey some species of title in her lawsuit to the defendants, and that defendants accepted that conveyance as trustees. The absence of such allegations is fatal to

---

42 (1992). Since "technical trust" appears to be an obsolete term, and since it only serves to add to the confusion surrounding the meaning of this statute, reference to it should be abandoned.

**3.** The one exception is Rule 8–101 of the Rules of Professional Conduct of the State Bar of

California, which requires all funds held by an attorney for the benefit of a client to be deposited into a segregated trust account. Since the defendants are not alleged to have held funds of any kind, this rule has no applicability here.

plaintiff's cause of action under Section 523(a)(4). *See, In re Hooper*, 112 B.R. 1009, 1013 (9th Cir. BAP 1990).

A number of reported cases can be found which appear to gloss over the need for establishing the elements of an express trust as a prerequisite to prevailing under Section 523(a)(4). *E.g., In re Woosley*, 117 B.R. 524 (9th Cir. BAP 1990). The path marked by such cases would ultimately lead to Section 523(a)(4) being extended to encompass simple acts of negligence by agents, corporate officers, and the myriad of others who hold the status of fiduciaries under California law. This is precisely the path which the U.S. Supreme Court counselled against in *Chapman v. Forsyth, supra* almost 150 years ago, and which the U.S. Court of Appeals for the Ninth Circuit has repeatedly refused to follow. I must decline to follow it as well.

For the reasons stated above, these adversary proceedings are hereby DISMISSED WITHOUT PREJUDICE. Plaintiff shall have 20 days from the date of this order in which to file amended complaints. Should she fail to do so within that time period, dismissal of these adversary proceedings shall automatically be deemed "with prejudice," and as such, final and appealable.